IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FUNDERBURK ENTERPRISES, LLC, RAYMOND FUNDERBURK, AND NANCY FUNDERBURK | § § § § | |
| v. | § § | A-09-CA-327 LY |
| CAVERN DISPOSAL, INC., TAYLOR DISPOSAL OPERATING, INC., PINNERGY, LTD., AND JOHN RANDALL TAYLOR | § § § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are: Defendants' Joint Motion to Dismiss for Lack of Subject Matter Jurisdiction or in the Alternative to Dismiss Count Four of Plaintiffs' Original Complaint (Fraud and Conspiracy to Commit Fraud) for Failure to Plead with Particularity (Clerk's Doc. No. 11), Plaintiffs' Response (Clerk's Doc. No. 14), and Defendants' Reply (Clerk's Doc. No. 20).

The District Court referred the above motion to the undersigned Magistrate Judge for resolution or report and recommendation as to the merits pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. The Court held a hearing on July 21, 2009, and heard argument from all parties on the motions.

# I. BACKGROUND[1]

A.   **The Texas Company**

Freestone Underground Storage, Inc. is a Texas corporation incorporated in 1986 for the purpose of holding the title to, and collecting lease payments and royalties on, the surface estate and salt rights to property in Freestone County, Texas known as the Butler Salt Dome.[2] Plaintiffs Ray and Nancy Funderburk ("the Funderburks") are the sole shareholders of Freestone Underground Storage, Inc. On August 25, 1993, the Funderburks and Freestone Underground Storage, Inc., executed a Lease Agreement (the "Lease") with Defendant John Randall Taylor ("Taylor") to lease the salt dome to Defendant Cavern Disposal, which is owned by Taylor. The Lease was for an initial term of 20 years with options to renew. Although Cavern Disposal is the tenant under the Lease Agreement, Taylor ran operations on the property through Defendant Taylor Disposal Operating, Inc., and Defendant Pinnergy, Ltd. At the time of the Lease Agreement, the Butler Salt Dome property had two large, separate caverns which had been used for storing and disposing of oil industry waste since about 1965. The caverns were operated pursuant to permits issued by the Texas Railroad Commission to Taylor Disposal Operating, Inc.

In May of 2005, Taylor informed the Funderburks that his companies had damaged the Butler Salt Dome's two salt caverns and the caverns were no longer separate structures. Taylor admitted to the Funderburks that the communicating caverns posed a serious problem that required correction or the Texas Railroad Commission could revoke the permits required for continuing operations.

---

[1] Unless otherwise indicated, the facts recited in this section are based on the allegations of the Plaintiffs' complaint.

[2] Salt domes and the caverns within them are used to safely store oilfield waste because salt is essentially impermeable to fluid or gas.

Despite repeated promises that he would repair the two caverns, Taylor did not successfully remedy the damage to them. In a letter dated January 14, 2008, written on Freestone Underground Storage letterhead, the Funderburks informed Taylor that "our expert salt geologist recognized your efforts to correct the problem, but is not optimistic that you will be successful in repairing the cavern damage," and requested that Taylor abandon the lease. *See* Exhibit A1 to Defendants' Reply.

In correspondence dated March 18, 2009, the Texas Railroad Commission informed Taylor that the permits were subject to termination due to the change in conditions of the caverns. On April 20, 2009, Taylor responded to the Texas Railroad Commission, admitting that he had exhausted all attempts to repair the caverns, stated he had no opposition to the proposed cancellation of the permits, and agreed to plug and abandon the wells. The Plaintiffs filed this case a week later, on April 27, 2009. They allege that Cavern Disposal is in material breach of the Lease Agreement and that Plaintiffs are thus entitled to terminate the agreement. They also allege claims for breach of contract, negligence, fraud, and conspiracy to commit fraud against all Defendants. They seek damages for permanent loss of use of the two salt caverns in the amount of $8,000,000.00, damages for the loss of royalty income from October 2006 to the present in the amount of $600,000.00, actual damages for the diminished value of the property in the amount of $12,000,000.00, punitive damages, interest, fees and costs.

B.  **The New York Company**

In 2004 the Funderburks began looking for residential property in LeRoy New York, so they could live near their son, Earl Funderburk. *See* Exhibit A to Plaintiff's Response at ¶ 3. The Funderburks allege that they organized Funderburk Enterprises, LLC, on June 18, 2004, anticipating a move to New York. In June of 2006, the Funderburks purchased a house in LeRoy, New York,

3

and began splitting their time between their house in Mississippi and LeRoy, New York. In October of 2006, the Funderburks purchased a commercial building, the "Historic Jell-O Factory Complex," in LeRoy, New York. Upon this acquisition, the Funderburks assert that they maintained a business office at the factory complex, and began transferring their business interests to New York at this time. Eventually this included the interests they held in the Freestone County property. By an Assignment Agreement ("the Assignment") dated January 15, 2008, Freestone Underground Storage, Inc. assigned its rights and interests in the Lease Agreement and "any and all causes of action belonging to [Freestone Underground Storage] arising from the August 25, 1993 Lease Agreement against Lessee, Randy Taylor, Taylor Disposal Operating, Inc., Pinnergy, Ltd., and any other individual or entity" to Funderburk Enterprises, LLC. Through their affidavits attached to their Response, the Funderburks allege that "[a]fter our October 2006 acquisition of the Historic Jell-O Factory Complex, at 57 North Street, LeRoy, New York 14482, Ray and I assigned the lease income from Freestone Storage, Inc., to Funderburk Enterprises, LLC." *See* Exhibit A to Plaintiff's Response, Affidavit of Nancy Funderburk at ¶ 7.

## II. ANALYSIS

### A. Issue Presented

Because the Funderburks and their New York company, Funderburk Enterprises, are citizens of New York,[3] and the Defendants are all Texas citizens, Plaintiffs contend that this Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, arguing that there is complete diversity of

---

[3] For purposes of determining diversity, a limited liability company is not a citizen of the state in which it was organized, but rather is a citizen of the state or states of which its partners are citizens. 28 U.S.C.A. §§ 1332(c)(1); *Carden v. Arkhoma Associates*, 494 U.S. 185, 195-96 (1990). The Funderburks moved to New York in April 2009, the month this suit was filed.

4

citizenship between the parties. Defendants dispute this, and have moved to dismiss for lack of subject matter jurisdiction, alleging that diversity jurisdiction has not been sufficiently established because it is based upon an assignment from Freestone Underground Storage, Inc. (a Texas corporation whose participation would defeat diversity), to Funderburk Enterprises, LLC, (a New York entity), which violates the anti-collusion provisions of 28 U.S.C. § 1359.

B.     **Standard under Rule 12(b)(1)**

A motion to dismiss filed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction must be considered by the court "before any other challenge because the court must find jurisdiction before determining the validity of a claim." *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (internal citation omitted). Since federal courts are considered courts of limited jurisdiction, absent jurisdiction conferred by statute, federal courts lack the power to adjudicate claims. *See, e.g., Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). Therefore, the party seeking to invoke the jurisdiction of a federal court carries the burden of proving its existence. *Stockman*, 138 F.3d at 151; *Cross Timbers Concerned Citizens v. Saginaw*, 991 F.Supp. 563, 566 (N.D. Tex. 1997).

In ruling on a motion to dismiss for lack of subject matter jurisdiction, "a district court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). In ruling, the court may rely on any of the following: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's

resolution of disputed facts." *MDPhysicians*, 957 F.2d at 181 n.2 (citing *Williamson*, 645 F.2d at 413). The standard of review for a 12(b)(1) motion to dismiss turns on whether the defendant has made a "facial" or "factual" jurisdictional attack on the plaintiffs complaint. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). A defendant makes a "facial" jurisdictional attack by merely filing a motion under Rule 12(b)(1) challenging the court's jurisdiction. *Id.* In this instance, the court is merely required to assess the sufficiency of the allegations contained in the plaintiff's complaint, which are presumed to be true. *Id.* A "factual" attack, however, is made by providing affidavits, testimony and other evidentiary materials challenging the court's jurisdiction. *Id.* When a "factual" jurisdictional attack is made by a defendant—as has been done here—the plaintiff must submit facts in support of the court's jurisdiction and bears the burden of proving by a preponderance of the evidence that the court, in fact, has subject matter jurisdiction. *Id.*

**C.     Was the Assignment Collusive under 28 U.S.C. § 1359?**

Defendants argue that diversity jurisdiction does not exist because it was improperly manufactured in violation of 28 U.S.C. § 1359. That statute provides:

> [a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

*Id.* The purpose of this provision is to "prevent the litigation of claims in federal court by suitors who by sham, pretense, or other fiction would acquire spurious status that would allow them to invoke the limited jurisdiction of federal courts." *Nolan v. Boeing Co.*, 919 F.2d 1058, 1067 (5th Cir. 1990); *see also Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 828-29 (1969). Application of § 1359 has "generally been restricted to circumstances involving assignment of interests from non-diverse to diverse parties to collusively create diversity jurisdiction." *Delgado v. Shell Oil Co.*,

231 F.3d 165, 178 (5th Cir. 2000). As noted, in this case the assignment was from Funderburk Underground Storage, Inc., a non-diverse party, to Funderburk Enterprises, LLC, a diverse party.

In determining whether diversity jurisdiction has been created in an improper or collusive manner, the court must consider the totality of the circumstances. Courts across the country have considered: (1) whether there was nominal or no consideration involved in the assignment; (2) whether the assignee had any previous connection to the assigned claim; (3) whether there was a legitimate business reason for the assignment; (4) whether the timing of the assignment suggests it was merely an effort to secure federal diversity jurisdiction; (5) whether the assignor exercises any control over the conduct of the litigation; and (6) whether the assignor retains any interest in the action such as receiving a portion of the assignee's recovery. *Hytken Family Ltd. v. Schaefer*, 431 F.Supp.2d 696 (S.D. Tex. 2006) (citing *Long & Foster Real Estate, Inc. v. NRT Mid-Atlantic, Inc.*, 357 F.Supp.2d 911, 922-23 (E.D. Va. 2005) (collecting cases). *See also* 14 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3639 (3d ed. 1998).

In addition to reviewing these six factors, some circuits have applied a rebuttable presumption of collusion when an assignment that creates diversity was entered into by related entities. *See Dweck v. Japan CBM Corp.*, 877 F.2d 790, 792 (9th Cir. 1989); *Airlines Reporting Corp. v. S and N Travel*, 58 F.3d 857, 862 (2d Cir. 1995); *Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991-93 (9th Cir. 1994); *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 475 (2d Cir. 1976); *Toste Farm Corp. v. Hadbury, Inc.*, 70 F.3d 640, 643 (1st Cir. 1995). Other circuits have rejected the application of the rebuttable presumption. *Herzog Contracting Corp. v. McGowen*, 976 F.2d 1062, 1067 (7th Cir. 1992); *Ambrosia Coal and*

*Const. Co v. Pages Morales*, 482 F.3d 1309 (11th Cir. 2007). Courts that have rejected the application of the rebuttable presumption apply the six factors set forth above to determine whether the anti-collusion statute has been violated. *See Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, (11th Cir. 2007). Because the Fifth Circuit has not addressed whether a presumption of collusion arises from an assignment between affiliated companies, out an abundance of caution the Court will review this case both with and without the application of the presumption.

1. **Application of the Presumption.**

As noted, various courts have held that transfers between affiliated corporations "are presumptively ineffective to create diversity jurisdiction." *Dweck*, 877 F.2d at 792. The presumption has been extended to assignments between corporations and their officers and directors. *See Dweck*, 877 F.2d at 792; *Blythe Indus., Inc. v. Puerto Rico Aqueduct & Sewer Auth.*, 573 F.Supp. 563, 564 (D.P.R. 1983); *also see Syms v. Castleton Indus., Inc.*, 470 F.2d 1078, 1079 (5th Cir. 1972) (finding that the assignment from one trustee to another was a sham assignment intended only to create federal jurisdiction). The facts underlying this analysis are not in dispute. Nancy Funderburk is the president of Funderburk Enterprises, LLC, and Nancy and Ray Funderburk are its only members. Freestone Underground Storage is wholly owned by the Funderburks. Defendants assert that these entities are either affiliates or parent and subsidiary. Plaintiffs respond that the two entities have no legal relationship to one another, and further assert that Freestone Underground Storage is a dormant entity and that they conduct all of their businesses through Funderburk Enterprises.

While the cases which apply the presumption do not define the term "related entities" or "affiliate," the important factor seems to be the existence of common ownership or control of the two entities:

> the scrutiny normally applied to transfers or assignments of claims which have the effect of creating diversity must be doubled in the case of assignments between related or affiliated corporations since common ownership or the control by one of the other only serves to increase the possibility of collusion and compound the difficulty encountered in detecting the real purpose of the assignment

*Prudential*, 546 F.2d at 475   *See also* TEX. BUS. ORG. CODE § 1.002(1) (defining an "affiliate" as a person who controls, is controlled by, or is under common control with another person); BLACK'S LAW DICTIONARY 59 (7th ed. 1999) (defining "affiliate" as a "corporation that is related to another corporation by shareholdings or other means of control").  Under any of these definitions, Freestone Underground Storage and Funderburk Enterprises qualify as related or affiliated entities, as both are under the common control of the Funderburks.  Moreover, the evidence before the Court does not support the Funderburk's contention that Freestone Underground Storage is a dormant corporation.  Thus, it appears rather clear that the assignment here is between related entities or affiliates, and thus there is a presumption it is collusive for purposes § 1359.

Although the presumption of collusion is strong, it is rebuttable.  In order to overcome it, the party who asserts the validity of the assignment has the burden of proving that it was in fact not made collusively. *Dweck*, 877 F.2d at 792; *Prudential Oil*, 546 F.2d at 476.  Carrying this burden requires a credible showing of a legitimate reason for the transfer, that is, a reason unrelated to the creation of federal court jurisdiction. *Dweck*, 877 F.2d at 792-93.

The Funderburks argue that the assignment was part of their efforts to consolidate all their business activities into one entity after purchasing a building in LeRoy, New York, in October of 2006.  As noted earlier, the Plaintiffs began planning to relocate to New York in 2006, and began transferring some of their business interests to New York at that time.  As evidence of this intention to transfer their business interests to Funderburk Enterprises, the Funderburks offer evidence of a

different lease, not the subject of this case, that Freestone Underground Storage executed on November 29, 1991, with tenants William Johnson and Bonner Brazzeil ("the Johnson Lease").

On September 26, 2008, after the assignment of the Lease at issue in this case, the Johnson Lease was assigned to a new lessee, Basic Energy Services, L.P. The Funderburks argue that the lease addendum effectuating this assignment reflects their intent to move their business interests to New York, as it requires that payments be mailed to Funderburk Enterprises in LeRoy New York.[4] Nancy Funderburk testified that because of a cordial working relationship, Johnson had been making its lease payments to Funderburk Enterprises per Nancy Funderburk's instructions, since late 2006. Plaintiffs maintain that this shows that the transfer of business interests from Texas to New York began long before this lawsuit was filed. Funderburk asserts that she intended to give Taylor similar instructions once the promised repairs were made and he resumed making lease payments. *See* Exhibit A to Plaintiffs' Response at ¶ 11-12. She claims that "the day after a conversation on January 14, 2008, with Taylor, she executed an irrevocable assignment agreement, on behalf of Freestone Underground Storage, Inc., in favor of Funderburk Enterprises in anticipation that Taylor's repairs would be complete and lease payments would resume soon." *Id.* at ¶ 12. The Funderburks allege that since December 2006, Freestone Underground Storage has been a dormant corporation whose interests have been handled by or assigned to Funderburk Enterprises. *See* Plaintiff's Response at p. 2.

---

[4]Notably, the Addendum, signed September 16, 2008, is an addendum "to the original Lease/Purchase Agreement hereto attached and dated November 29, 1991, executed between Nancy L. Funderburk (Lessor) as the administrator and president of Freestone Underground Storage, Inc." and was signed by Nancy L. Funderburk "Individually and as President of Freestone Underground Storage, Inc." Thus, Freestone remained a party to the lease at least as of the time of the Addendum.

Defendants counter that these alleged legitimate business reasons for the assignment are rebutted by the facts of the case. First, with regard to the Funderburks' statement that they assigned the Lease interests to Funderburk Enterprises after the January 14, 2008 conversation with Taylor in anticipation that the repairs would soon be complete and the lease payments resumed, Defendants point to a January 14, 2008, letter from Freestone Underground Storage to Taylor. In that letter the Funderburks state that they did not believe that the caverns could be successfully repaired and requested a release of Taylor's operating lease in a plan to sell the property. *See* Exhibit A1 to Defendants' Reply. Thus, the evidence does not support Plaintiffs' contention that the assignment was motivated by an expected income stream, when all parties were obviously cognizant at the time of the assignment that the damage to the salt caverns was irreparable and the property would not generate future income for the Funderburks other than through sale or litigation.

With regard to the claim that the assignment was merely part of the Funderburks' overarching plan to transfer all of their business interests to Funderburk Enterprises in New York, Plaintiffs also fail to carry their burden. Contrary to the Plaintiffs' arguments, the evidence in the record suggests that the Plaintiffs moved their interests to New York in a piecemeal fashion. First they assigned the Lease in issue in this litigation to Funderburk Enterprises, then several months later, they assigned the lease payments from the Johnson Lease to Funderburk Enterprises. More importantly, Freestone Underground Storage continued to be an active Texas corporation that was still a party to both leases, and it—not Funderburk Enterprises—owned the land and mineral rights that were the subject of the two leases. In fact, Plaintiffs did not in fact move all their business interests to New York, but left much behind in Texas.

Further, the Funderburks fail to explain why having a New York company own the interests in the litigation was preferable to leaving the interests in the Texas corporation. Presumably they believed it would be more convenient for them for the interests to be placed in a New York entity. It is unclear why this would be so, however. In today's world, the receipt of lease payments and the distribution of corporate proceeds to shareholders can take place anywhere in the world, regardless of the state in which a corporation or company is organized. Further, the Plaintiffs' own evidence demonstrates that they had not lived in Texas since 1993, but rather resided in Florida and Mississippi between 1993 and 2006. Exhibit A to Plaintiff's Response, Affidavit of Nancy Funderburk at ¶ 2. From 2006 to 2009, the Funderburks split their time between Mississippi and New York, and then moved to New York in April 2009. *Id.* at ¶ 4. During none of the time from 1993 to 2008—a time during which the Funderburks were not present in Texas—did the Funderburks find it necessary to relocate the entity holding the disposal leases and salt dome property interests. The evidence fails to explain why things were different in 2008, when the Funderburks moved to New York, and thus their explanation that they executed the assignment because of their move is belied by their past actions.

Finally, Defendants also offer evidence that Freestone continued to be active in the operation of the salt dome property even after the time that the Funderburks contend they were moving their business interests to New York. There is much documentary evidence of this, including:

- an August 26, 2007, letter drafted on Freestone letterhead and signed by Plaintiffs Nancy and Ray Funderburk in their positions as President and Vice President of Freestone to the Director of Environmental Services for the Railroad Commission of Texas, *see* Exhibit B to Defendants' Reply;

- the January 14, 2008, letter to Taylor discussed previously, *see* Exhibit A1 to Defendants' Reply;

12

- e-mails from Plaintiff Nancy Funderburk to Defendant Randy Taylor dated February 28 and March 1, 2008,[5] discussing the proposed buyout of the lease and signed by Nancy Funderburk on behalf of Freestone, see Exhibits 2 & 3 to Defendants' Reply;

- a January 13, 2009, letter to Defendants Taylor Disposal Operating, Inc., and Randy Taylor, drafted on Freestone letterhead and signed by Plaintiff Nancy Funderburk in her position as President, requesting a response to an attached proposal for selling back to Freestone, Defendants' interest in the subject lease, see Exhibit 4 to Defendants' Reply;

- checks from Defendant Taylor Disposal Operating, Inc. to Freestone issued between January 2006 and January 2008 that were deposited into Freestone's bank account, see Exhibit 5 to Defendants' Reply; and

- a February 17, 2009, Invitation to Bid on the Butler Salt Dome Property describing the property as a "Freestone Underground Storage, Inc., Facility" and stating that all communication concerning the property should be addressed to Freestone, care of Ray or Nancy Funderburk, see Exhibit C to Defendants' Reply.

From these documents it appears that Freestone Underground Storage continued to be active in the operation of the salt dome even after the Funderburks' 2006 relocation to New York.

The Plaintiffs have failed to proffer sufficient persuasive evidence to rebut the presumption that the transfer was for the purpose of manufacturing diversity; instead, the evidence supports that the assignment was motivated by an expectation of a future disagreement with Taylor about ending his lease. Because the evidence proffered by Plaintiffs does not show a consistent intent to move the Funderburks' business interests in Texas to New York, and because the Plaintiffs failed to do so until they knew potential litigation was imminent, this evidence is insufficient to support a finding that the assignment was for a legitimate business interest and not in order to secure a federal forum.

---

[5] This was *after* the assignment of the Taylor Lease to Funderburk Enterprises.

Thus, if the presumption of collusion applied by many courts is used here, the Plaintiffs' evidence has failed to rebut that presumption, and the assignment therefore violates 28 U.S.C.A. § 1359. Dismissal of the case for lack of jurisdiction is therefore warranted.

2.  **Consideration of the Six Factors**

When courts do not apply the presumption of collusion, they apply the six factors described earlier. Because the law in this circuit is not clear as to whether a presumption exists, the Court will also analyze the question without the presumption.

   a.  **Consideration for the Assignment**

The first factor courts consider in deciding if an assignment is collusive under § 1359 is whether there was nominal or no consideration involved in the assignment. *Kramer*, 394 U.S. at 827-28; *Long & Foster,* 357 F.Supp.2d at 922-23. Freestone Underground Storage assigned to Funderburk Enterprises its rights and interests in the Lease Agreement and all of its causes of action arising from the Lease Agreement for $100.00. *See* Exhibit C to Plaintiff's Response. Consideration of $100 for the transfer of what the Plaintiffs allege are multi-million dollar claims, plus whatever value the lease currently has, appears to be plainly inadequate. The Funderburks do not point to anything else of value that Funderburk Underground Storage received in exchange for the transfer of the claims. Thus, this factor suggests that the assignment was not valid, at least for purposes of investing the court with diversity jurisdiction. *See Hytken*, 431 F.Supp.2d at 700.

   b.  **Assignee's Previous Connection to the Claim**

The second factor the court considers is whether the assignee had a pre-existing connection to the claim. If the assignee possessed a previous interest or connection to an assigned claim, it is less likely that an assignment was collusive. *Long & Foster Real Estate, Inc.*, 357 F.Supp.2d at 922;

*see also Western Farm Credit Bank v. Hamakua Sugar Co.*, 841 F.Supp. 976, 982 (D. Haw. 1994) (in the case of an assignment to a subsidiary or affiliate, a significant, preexisting interest held by the assignee will assist the assignee in rebutting the presumption of collusion). Here, the Plaintiffs have failed to offer any evidence that Funderburk Enterprises had any pre-existing interest in the Lease Agreement or the litigation arising from that Lease. Moreover, Funderburk Enterprises was created well after the Lease, and for reasons completely unrelated to the Lease or to Funderburk Underground Storage's operations. This factor also fails to support Plaintiffs' position.

    c.  **Reason for the Assignment**

The next factor the Court must consider is whether there was a legitimate business reason for the assignment. *See Hytken*, 431 F.Supp.2d at 700. This is the question the Court examined as part of the presumption analysis in the previous section. As noted there, Plaintiffs state that they transferred the Lease and any causes of action under that Lease to their New York corporation because they were relocating to New York. As noted in the prior section, that argument is not borne out by the facts, and thus this factor also fails to support the Plaintiffs.

    d.  **Timing of the Assignment**

The fourth factor is whether the timing of the assignment suggests it was merely an effort to secure federal diversity jurisdiction. *See Hytken*, 431 F.Supp.2d at 700; *Canton Indus. Corp. v. Mi-Jack Products, Inc.*, 944 F.Supp. 853 (D.Utah 1996). Plaintiffs' argument is that they intended to consolidate all their business interests in New York. However, the Plaintiffs offer no colorable reason why they could not have moved all their business interests to New York much earlier—in 2006, for instance, after they purchased property there—instead of in 2008, which just happens to be the same time that they became aware that the salt dome caverns were not reparable and litigation

15

was imminent. Moreover, the evidence demonstrates that they did not in fact move all of their business activities to New York, as they continued to conduct business as Freestone Underground Storage well after the assignment. *See* Exhibit C to Defendants' Reply, Invitation to Bid.

The Funderburks also assert that the assignment was executed in preparation for the repair of the caverns. However in her Affidavit, Nancy Funderburk states that:

> On January 14, 2008, Ray and I expressed, by telephone, our concern to Taylor that he would be unsuccessful in solving the communication problem between the caverns. . . .the relationship that Ray and I had with Taylor was not cordial, so we decided to execute a written assignment, dated January 15, 2008. . . ."

*See* Nancy Funderburk Affidavit, Exhibit A to Plaintiffs' Response. Additionally, the Funderburks, as President and Vice-President of Freestone Underground Storage, sent Taylor a letter dated January 14, 2008, stating that their "expert salt geologist" was "not optimistic that [Taylor] will be successful in repairing the cavern damage" and requested a release of the lease "based on that knowledge." *See* Exhibit A1 to Defendants' Reply, Letter dated January 14, 2008. The timing of the assignment is suspect as it seems to have occurred only after the Funderburks realized that the caverns would not be repaired and the relationship with Taylor had become potentially contentious, and could end in litigation. The Court finds the timing of the assignment of the Lease is questionable as it appears to have been made in anticipation of litigation.

e. **Control by the Assignor Over Litigation**

In this case Nancy and Ray Funderburk are the owners of Freestone Underground Storage and Funderburk Enterprises. Thus, the same individuals are controlling the litigation regardless of which entity owns the claims. Having said this, it does not appear that Freestone Underground Storage has retained any right to control the litigation, or has exercised any such control. Regardless,

16

the common ownership of the two closely-held entities suggests that this factor is neutral in the analysis, or at best is a small factor in favor of the Plaintiffs.

### f. Whether the Assignor Retains Any Interest

The final factor to be considered by the Court is whether the assignor retained any interest in the action, meaning they would receive a portion of the assignor's recovery. Plaintiffs assert that the assignment is irrevocable, and it does in fact state that it is so. Thus, it appears that the cause of action has been fully, and permanently, assigned to Funderburk Enterprises, and Freestone Underground Storage has not retained an interest in the claims. However, as just noted, Freestone Underground Storage and Funderburk Enterprises are both controlled by Nancy and Ray Funderburk, and thus any recovery in the litigation would go to the Funderburks regardless of the party named as a Plaintiff. This factor thus is a not a strong consideration in the analysis.

### g. Summary

Of the six specific factors the Court must consider, four cut against the Funderburks, and the other two are largely neutral. Viewing the totality of the circumstances, the Funderburks have failed to carry their burden to establish jurisdiction. The assignment between their two entities violates 28 U.S.C.A. § 1359, and is thus ineffective to create diversity jurisdiction. In *Caribbean Mills,* the Supreme Court noted that the purpose underlying § 1359 was to prevent the "manufacture of Federal jurisdiction" by assignments which are easy to arrange and involve few disadvantages for the assignor. 394 U.S. at 828-829. In this case, although Freestone Underground Storage, Inc. did not retain an interest in the recovery, the assignment lacked economic substance as the Funderburks treated these two corporate entities as porous—moving payments from one to the other without documentation (as they did in the case of the Johnson Lease), and assigning the interest in this

litigation without consideration. Except for diversity, it makes no difference which entity holds the rights to the legal claims, as the Funderburks own and control both entities and stand to be the ultimate beneficiaries of any recovery. The Court recommends that the District Court grant the Motion to Dismiss on this basis as well.

## III. RECOMMENDATION

The undersigned **RECOMMENDS** that the District Judge **GRANT** Defendants' Joint Motion to Dismiss for Lack of Subject Matter Jurisdiction and **DENY AS MOOT** the Alternative Motion to Dismiss Count Four of Plaintiffs' Original Complaint (Fraud and Conspiracy to Commit Fraud) for Failure to Plead with Particularity (Clerk's Doc. No. 11), and **DISMISS** this case for lack of subject matter jurisdiction.[6]

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

---

[6]In light of this Report and Recommendation, the undersigned has not addressed Defendants' request that Count Four of Plaintiffs' Original Complaint be dismissed for not having been pled with sufficient particularity.

District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 22nd day of September, 2009.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE